NEW ORLEANS, JANUARY, 1884. 63

Howell vs. Butchers' Union Slaughterhouse and Live Stock Landing Co.

Rehearing refused.

No. 8925.

36   63|
47  1287,
———
36   65
f117  396

STODDARD HOWELL VS. THE BUTCHERS' UNION SLAUGHTERHOUSE AND LIVE STOCK LANDING COMPANY.

The constitutional prohibition of monopolies is absolute and effective, and therefore abro
.gated the exclusive privilege of slaughtering animals for food, given by the legislature
of 1869 to the Crescent City Stock Landing and Slaughterhouse Company, and invested
the municipal authorities of the city with power to regulate the matter, subject to the
approval of the Board of Health.

A slaughterhouse is *prima facie* a nuisance, and therefore until the municipal authorities
regulated the location of such buildings by fixing the limits within which they should
not be placed, no one could lawfully locate one within the city boundaries.

After those authorities had thus regulated the matter, a company may locate its abattoir
and appurtenances in conformity thereto, and an injunction will not lie to restrain it in
the absence of proof of nuisance.

APPEAL from the Civil District Court for the Parish of Orleans, Lazarus, J.

B. R. Forman for Plaintiff and Appellee.

Robert Mott and T. J. Semmes for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. The suit is an injunction by a resident of New Orleans to restrain and prevent the erection of a slaughterhouse and its adjuncts, hog pens, stock yards, etc., for the reason that they would be nuisances, and would destroy the health of the neighborhood, and impair the value of his property, and also to prohibit the cutting of the levee, which he alleges the defendant was about doing for purposes connected with its slaughtering.

The answer denies that a slaughterhouse at that particular spot would be prejudicial to health or hurtful to property, and avers that the plaintiff has all along encouraged and invited its location there, and continued acquiescent up to and during the time the buildings were erecting.

A slaughterhouse is *prima facie* a nuisance, but it does not follow that it is a nuisance to all the world. To those who are remote from it, or not near enough to be affected by it, it is as if it did not exist

The spot selected for this building is on the verge of the city limits. Its location has been approved by the Board of Health, and the plaintiff welcomed it to his neighborhood.

The main ground of contest on the trial seems to be that the location was within the city limits, which the plaintiff claims is prohibited by the Act of 1869, Sess. Acts, p. 170. The prohibition in that Act of slaughtering animals for food within New Orleans is coupled with the permission to the company mentioned therein to do it. It was but a form of expression by which a monopoly of that business was given to the Crescent City Stock Landing and Slaughterhouse Company. Since then, the Constitution has interposed a prohibition of monopolies, and delegated the regulation of this particular business to the municipal authorities of this city. This was an abrogation of the exclusive privilege heretofore granted, and a conferring upon the local government the right to say how and where it should be exercised in future. This right was legally conferred. Cres. City L. S. L. Co. vs. New Orleans, 33 A. 934.

The city authorities had not acted on the matter when this injunction was obtained, but since then and before the trial they enacted ordinances that had been approved by the Board of Health, under which the location of a slaughterhouse at this point is permitted. The plaintiff anticipated the Board of Health in the permission he gave, and the City Council, in fixing the limits beyond which a slaughterhouse might be placed, only confirmed the opinion already expressed by the plaintiff upon the appropriateness of this spot.

The supplemental answer charges that he does not now apprehend a nuisance, or believe that the location of a slaughterhouse will create one, but is lending his name to the Company which has long exercised the exclusive privilege of slaughtering animals for food under the Act of 1869, to assist it in continuing the enjoyment of that monopoly. The boundary of his property is four hundred and eighty feet distant from the boundary of the tract or parcel of land upon which the defendant was erecting its buildings, and it does not yet appear. that this is not sufficiently remote to avoid any annoyance from the business the defendant. proposes to conduct in them.

The second ground of injunction is that the defendant intended to cut the levee, which would expose the plaintiff's property to danger from inundation. The record is barren of proof to sustain the charge, except that a ditch or drain was digging from the buildings to the river, and a discharge pipe was to be inserted through the base of the levee, both to serve as a vent for the liquid from the abattoir. This is

one of the appliances designed by the defendant to prevent the creation of a nuisance, and is similar to that used by the company now engaged in slaughtering. An experienced engineer is employed by the defendant to construct this necessary outlet for impure liquids, and every precaution is taken to avert the consequences suggested by the plaintiff. It seems inconsistent and querulous for him to complain of an apprehended nuisance, and in the same breath to try to prevent the precautions that are taken to prevent the nuisance.

The lower court dissolved the injunction as to the slaughterhouse, and perpetuated it as to cutting the levee, at the defendant's costs. The defendant was without authority to place the slaughterhouse at this spot until the city authorities had exercised the power delegated to them in the matter, but after they had acted, the company should not be mulcted in costs for availing itself of the permission granted, in the absence of proof that any damage has resulted therefrom.

It is therefore ordered and decreed that the judgment of the lower court is set aside, and the injunction of plaintiff is dissolved, the defendant to pay all costs incurred before the passage of the city ordinances in the record, and the plaintiff to pay those incurred thereafter.